UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WEST BEND MUTUAL | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:12 CV 580 |
| | ) |
| CLELAND HOMES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court on cross motions for summary judgment filed by plaintiff West Bend Mutual Insurance Company ("West Bend") and defendants Robert Sniady, Terry Sniady, and Gary Orlowski (jointly referred to herein as the "Homeowners"). Briefly, West Bend brought this action seeking a declaratory judgment to establish that it has no duty to defend or indemnify Cleland Homes, Inc., and/or Cleland Builders, Inc. (referred to jointly herein as "Cleland") under a policy[1] of commercial general liability ("CGL") insurance (the "Policy") for a suit brought against Cleland by the Homeowners, alleging (oversimplifying) that Cleland's negligence in building their homes caused water intrusion into or under their basements. West Bend contends that two exclusions in the policy operate to preclude coverage, and the Homeowners responded jointly in opposition and designated their response as a cross-

---

[1] Policy number CPE0323312 09, attached to the complaint (DE # 1) as Exhibit A. (DE # 1-1, also attached to the memorandum supporting summary judgment as DE # 25-1.)

motion. The Cleland entities appear to have ceased operations and are not actively participating in this case.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When considering the motion, the court must construe all of the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Chaib v. Geo Group, Inc.*, 819 F.3d 337, 340–41 (7th Cir. 2016). In a case involving cross-motions for summary judgment, that means that each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

In the present case all of the material facts which are necessary to resolve the legal question of coverage under the policy are undisputed. The court therefore simply incorporates the undisputed facts into the discussion and analysis which follows. The parties agree without discussion that the application/interpretation of the policy at issue in this case is governed by Indiana law. (DE #20 at 3.))[2]

---

[2] All citations herein to page numbers in the record are to the page number assigned by the CM/ECF system, not to the document's internal pagination.

First, it should be noted that in its complaint West Bend alleged that no "property damage" within the meaning of the policy had occurred, completely negating its duty to defend or indemnify. In moving for summary judgment it has abandoned that position. It admits that because Orlowski has alleged damage to personal property in his home, "there is coverage for one of the claims . . . and it [West Bend] has an obligation to protect its insured and provide it with a defense as to all of the claims asserted in the underlying litigation." (DE # 25 at 17; DE # 30 at 1-2.) In addition West Bend concedes that damage to the structure of the homes themselves that results from faulty workmanship constitutes an "occurrence" of "property damage" within the Policy's initial grant of coverage. (DE # 25 at 9-10.) West Bend's argument for summary judgment is that because of two exclusions from coverage in the policy, the initial coverage is avoided: "[N]o coverage exists for the majority of claims" asserted, specifically, the Homeowners' claims for structural damage to, and diminished value of, their houses. (*Id.*)

The underlying litigation the Homeowners filed against Cleland in state court alleges in the complaint as is pertinent here:

> The subdivision was designed in a such a way [sic] as to create a run off of ground water onto the lots owned by the plaintiffs wherein defendant Cleland Builders built their home[s].
>
> The design of the subdivision and/or construction of the homes on the lots within the subdivision . . . was defective in that the plaintiffs' homes are sitting on ground wherein the water table underneath their home[s] is so high that their basements flood and/or damage has occurred to the

3

> structure of their home. The ground water flows under the basement slab[s] of their homes.
>
> [Cleland was] . . . negligent in designing and/or constructing the homes for the plaintiffs or . . . negligent in the water drainage plan for the subdivision.

(DE # 1-2 at 2, 3.)

When deposed in connection with the underlying litigation and asked about the cause of the water problems, Gary Orlowski said he believed that his home had been built at too low an elevation. (DE # 25-2 at 7 (p. 22 of deposition).) Similarly, in his deposition Robert Sniady explained that there was a high water table in the area and that his (and Orlowski's) home should not have been built with basements because they were below the level of the water table. (*Id*. at 19 (p. 21-23 of deposition).) Lance Cleland, the principal of the Cleland entities, stated in his deposition that Cleland Builders was responsible for determining the level for the foundation of the homes and that the Homeowners' houses, like all homes in the subdivision, were sited two feet above street level. (*Id*. at 45 (p. 19-20 of deposition).)

As stated, West Bend argues that two provisions in the Policy exclude coverage for the Homeowners' claims against Cleland for structural damage and diminished value. The exclusions can be referred to for convenience as the "Your Work" exclusion and the "Contractual Liability" exclusion. West Bend raises the Contractual Liability exclusion as its second argument, but the court will address it first.

It is not necessary to quote the text of the Contractual Liability exclusion, found in section I(2)(b) of the Policy (DE #1-1 at 46), it suffices to say here that the exclusion applies when an insured contractually assumes liability for damages. West Bend recognizes that the Homeowners have pleaded their claims in the underlying action as tortious negligence claims; it further acknowledges that under Indiana law every contract to perform work has an implied duty to do so skillfully, carefully and in a workmanlike manner. "Negligent failure to do so is a tort, as well as a breach of contract." *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 576 (Ind. Ct. App. 2003). Although a plaintiff can proceed under both theories, Indiana courts examine the contract between the parties to define the nature of the duty owed and the consequences of the breach. *Orkin Exterminating Co. v. Walters*, 466 N.E.2d 55, 58 (Ind. Ct. App. 1984) *(abrogated on other grounds by Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind. 1998)). Thus, parties cannot avoid contractual terms by framing their claims as torts. In *Orkin Exterminating*, for example, the plaintiff could not avoid a contractual term limiting Orkin's liability to re-application of pesticide treatment and instead obtain monetary damages by characterizing his suit as one claiming negligent performance of the contract. *Id.* at 59.

West Bend argues that the same logic is applicable here:

> [The Homeowners'] claims, in essence, assert that Cleland Builders failed to live up to its end of the bargain when it sold them their homes. Rather than provide them waterproof homes in a dry location, Cleland Builders sold them houses that had been built at too low of an elevation in an area with a high water table.

5

. . . .

> Regardless of the fact that [the Homeowners] have attempted to characterize their claims as sounding in tort, the nature of the duty owed by Cleland Builders (and the consequences of its breach) **can only be determined based on the sales contracts**. . . . Because in the absence of the obligations it assumed under the sales contracts, Cleland Builders would not have any liability to [the Homeowners] for the diminished value or structural damage claims, the contractual liability exclusion [in the] West Bend Policy bars coverage.

(DE # 30 at 7-8; DE # 25 at 15, emphasis added.) The problem with this argument is that while West Bend maintains that the nature of Cleland's duty can "only be determined based on the sales contracts," (DE # 25 at 15), West Bend has not provided copies of any such sales contracts for the court to use to make that determination. In short, the court won't grant summary judgment to West Bend based on inferences regarding duties from an unseen/unknown sales contract. What Cleland agreed to do or not to do is unknown: perhaps Cleland disclaimed any contractual liability whatsoever, and to prevail in the underlying action, the Homeowners will be required to prove a tort that exists independent of the contracts. It is possible that Cleland isn't even a party to the sales contracts: some other related entity might have owned and sold the homes.

Less hypothetically, without the contracts to examine, the court has difficulty concluding that a contract to build and sell a particular home would have provisions applying to ensure that the entire subdivision was not designed negligently in "such a way as to create a run off of ground water onto the lots owned by the plaintiffs," or with defects in its "water drainage plan," both of which are alleged in the underlying

6

complaint brought by the Homeowners. In other words, if Cleland's work grading the subdivision, creating drainage paths, retention areas, and so on, altered the flow of surface water so as to increase run-off onto the Homeowners' lots, causing a concurrent rise in the groundwater level of those lots, that sounds like a typical tort claim—whether or not it has any merit—that would exist independent of the sales contracts. *See Argyelan v. Haviland*, 435 N.E.2d 973, 975–77 (Ind. 1982) (discussing Indiana's common-enemy rule for water drainage.) The court's determination is that West Bend has not shown that the Contractual Liability exclusion entitles it to a summary judgment.

That leaves West Bend's primary argument, which is that the "Your Work" exclusion applies to preclude coverage. The "Your Work" exclusion, found at section I(2)(l) of the Policy, states that the insurance provided by the Policy does not apply to:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".[3]
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

---

[3] The "products completed operations hazard" is defined at section V(16) of the Policy, in oversimplified terms, as bodily injury or property damage that occurs away from premises that the insured owns or rents, and which arises from "your [the insured's] work." (DE #1-1 at 59.) The insured's "work" is defined in section V(22) as work or operations performed by the insured or on the insured's behalf, including materials, parts or equipment furnished in connection with such work or operations. (DE # 1-1 at 60.) Thus, property damage to a completed home sold by the insured to a third party which was caused by the insured's work would be included in the "products completed operations hazard."

7

(DE #1-1 at 49.) As stated by the Seventh Circuit, the "'work' . . . of a general contractor is the whole project," *Westfield Ins. Co. v. Sheehan Const. Co.*, 564 F.3d 817, 818 (7th Cir. 2009),[4] meaning that a house built by Cleland acting as the general contractor would be Cleland's "work." Thus, West Bend's argument is simple: the Homeowners' claimed property damage, consisting of erosion under the foundations and diminishment of the homes' values, is property damage to Cleland's completed work caused by Cleland's faulty construction work practices, and so expressly excluded by the plain language of the Your Work exclusion. *Cf. Westfield Ins. Co.*, 564 F.3d at 818 (water damage to homes not covered because "your work" exclusion in CGL policy means that property damage to a contractor's own work is not covered; exclusion did not contain subcontractor exception).

The Homeowners' response to this argument is also simple: It is undisputed that the concrete basement/foundations for the houses was poured by a subcontractor, Advance Concrete. The Homeowners argue this makes the exception to the exclusion ("[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor") applicable, and so the damage is covered by the Policy. The Homeowners argue that it is irrelevant that

---

[4] CGL policies are largely written using standardized forms and so cases involving them are broadly applicable. *See Sheehan Const. Co., Inc. v. Continental Cas. Co.*, 935 N.E.2d 160 (Ind. 2010) (*abrogating on other grounds R.N. Thompson & Assoc., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 162 (Ind. Ct. App. 1997) ("Because of the uniformity of language in CGL policies, we find factually similar decisions from courts elsewhere to be particularly persuasive.")).

Cleland solely determined the depth of the basement/foundation, because the terms of the exception "do not distinguish the ultimate party responsible from the laborer." (DE # 29-1 at 8.)

The court disagrees. In *Sheehan Const. Co.* the Indiana Supreme Court stated that it agreed with *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007), quoting it to state: "'By incorporating the subcontractor exception into the 'your-work' exclusion, the insurance industry specifically contemplated coverage for property damage **caused by a subcontractor's defective performance.**'" 935 N.E.2d at 171 (emphasis added). As stated in another case:

> The reason for this 1986 revision that added the subcontractor exception has been explained as follows:
>> [T]he insurance and policyholder communities agreed that the CGL policy should provide coverage for defective construction claims so long as the allegedly defective work had been performed by a subcontractor rather than the policyholder itself.

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 879 (Fla. 2007) (*quoting* 2 Jeffrey W. Stempel, Stempel on Insurance Contracts § 14.13[D] at 14–224.8 (3d ed. Supp. 2007)).

Here, if the Homeowners were claiming that Advanced Concrete's defective performance caused their problems—*e.g.*, that Advanced Concrete dug the foundations deeper than Cleland told it to, or used defective concrete that was porous and crumbling—then the subcontractor exception would apply. But that is not what the Homeowners are alleging: they are alleging that the subdivision was designed with a negligent drainage plan creating a run-off of water onto their properties, and that their homes were improperly sited on lots with a water table too high to allow a basement to

be constructed. Those allegations do not point to any defective work performed by Advanced Concrete, and the damaged work is the houses as a whole, because erosion is occurring under their foundations.

As a final matter, the Homeowners contend that at the very least a question of fact exists as to whether Advanced Concrete had a role in deciding how deep to place the homes' foundations. (DE # 29-1 at 4, 9.) They argue that Lance Cleland's deposition testimony mentioned above, where he said that Cleland Builders was responsible for determining the level for the foundation of the Homeowners' homes and that all homes in the subdivision were sited two feet above street level, doesn't show that Cleland Builders was *solely* responsible for determining the depth of the foundations. According to the Homeowners, simply because Advanced Concrete poured the foundations, it may have had a role. (*Id.* at 3-4.)

The Homeowners are entitled to all reasonable inferences, but an "inference" that is supported only by speculation or conjecture, not evidence, is not a reasonable inference that will defeat a summary judgment motion. *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). The Homeowners have not identified any evidence showing that Advanced Concrete had any part in Cleland's decision to site every home two feet above street level. The only thing they point out that comes remotely close is that when Robert Sniady first told Lance Cleland there was a water problem, Cleland sent someone from Advanced Concrete to check on it. (DE # 29-1 at 9; # 29-2 at ¶ 8; # 25-2 at 18 (p. 19 of deposition).)

All this does is give rise to more speculation: perhaps Cleland hoped that Advanced Concrete would report that something it had done was causing a problem. However, there is simply no evidence why Cleland called on Advanced Concrete, and no evidence that Advanced Concrete reported that the quality of its work was a source of the problem. That is consistent with the fact that there is no showing that any claims being asserted in the underlying litigation pin the blame on Advanced Concrete for doing shoddy work. All evidence shown to the court in this case indicates that the underlying litigation concerns the flow of water in the subdivision and the siting of the homes, not the quality of Advanced Concrete's work, and that means the exclusion applies.

For these reasons, the Homeowners' motion for summary judgment (DE # 29) is **DENIED** and West Bend's motion for summary judgment (DE # 24) is **GRANTED**. The clerk is to enter a final judgment in favor of West Bend which states:

> It is hereby **ORDERED, ADJUDGED and DECREED** that under Commercial General Liability policy # CPE0323312 09 West Bend Mutual Insurance Company has no duty or obligation to indemnify Cleland Homes, Inc. and/or Cleland Builders, Inc. against claims for real property structural damage and/or diminished value, which claims are asserted by Robert Sniady, Terry Sniady, and Gary Orlowski (whether individually or jointly) in case 71D06-1007-CT-00161 in the St. Joseph County, Indiana, Superior Court.

**SO ORDERED.**

Date: August 16, 2016

                                        s/James T. Moody  
                                        JUDGE JAMES T. MOODY  
                                        UNITED STATES DISTRICT COURT